# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:09-CR-0483-ODE/AJB** |
| **RAJASHAKHER P. REDDY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation ("R&R") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. CrR. 58.1(A)(3)(a), (b). A copy of the R&R and this order shall be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the R&R within **fourteen (14)** days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990). The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the

R&R may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED FROM the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983). The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this _5th_ day of _April_, 2010.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**UNITED STATES OF AMERICA**   )
                                )      **CRIMINAL ACTION FILE**
                                )
    **v.**                        )      **NO. 1:09-CR-0483-ODE/AJB**
                                )
**RAJASHAKHER P. REDDY,**    )
                                )
          **Defendant.**      )

## UNITED STATES MAGISTRATE JUDGE'S
## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Before the Court are the following pretrial motions:

(1)    The government's motion for a protective order, [Doc. 5];

(2)    The defendant's motion for a bill of particulars, [Doc. 30];

(3)    The defendant's motion to dismiss Counts 23s-29s or require election of counts based on duplicitous mail fraud counts, [Doc. 31];

(4)    The defendant's motion to dismiss fraud counts for failure to allege an essential element, [Doc. 32]; and

(5)    The defendant's motion to dismiss Count 34s concerning alleged falsification of records, [Doc. 33].

For the following reasons, the undersigned **DENIES AS MOOT** the motion for protective order, [Doc. 5]; **DENIES IN PART AND GRANTS IN PART** the motion

for a bill of particulars, [Doc. 30], and **RECOMMENDS** that the motions to dismiss, [Docs. 31, 32, 33], be **DENIED**.

## I.    *Introduction*

In a superseding indictment returned by the grand jury on December 2, 2009, [Doc. 23], the defendant was charged with wire fraud in violation of 18 U.S.C. § 1343, (Counts 1 through 22), [Doc. 23 at 1-7]; mail fraud in violation of 18 U.S.C. § 1341, (Counts 23 through 29), [Doc. 23 at 7-8]; health care fraud in violation of 18 U.S.C. § 1347, (Counts 30 through 33), [Doc. 23 at 9]; and falsification of records in a federal investigation, in violation of 18 U.S.C. § 1519, (Count 34).  [Doc. 23 at 9-10].[1, 2]

As will be shown, the defendant challenges the sufficiency of each count of the indictment, so the Court sets out the indictment's allegations in some detail. Specifically, Counts 1 through 22 charge wire fraud.  The superseding indictment charges that Dr. Reddy executed a scheme to defraud "by claiming to have performed health care services that he did not in fact perform."  [Doc. 1 at 1].  The indictment

---

[1]    Counts 1 through 29 and 34 also allege the defendant's liability under the aiding and abetting statute, 18 U.S.C. § 2.

[2]    The indictment also contains an asset forfeiture provision.

further alleges that the defendant owns and operates Reddy Solutions, Inc. ("RSI"), an Atlanta-based teleradiology company that offers around-the-clock professional radiology services to hospitals, imaging centers and radiology groups. The hospital or other facility performed the X-Ray, Magnetic Resonance Image, CT Scan or other test on-site and then electronically transmitted the films or images to RSI for Reddy or an RSI-contract radiologist to review, and prepare and send back a final report. The final report typically contained clinical findings related to the images obtained and the medical diagnosis. Teleradiology technology allows for the exchange of necessary information electronically although the patient, hospital or other RSI client may be hundreds of miles away from the RSI radiologist. [*Id.* at 1-2]. The superseding indictment further alleges that the defendant, himself a board-certified radiologist, also served as one of the radiologists submitting signed reports to client hospital and other providers. [*Id.* at 2].

In addition, the indictment alleges that RSI employs radiological technicians, "Radiology Practice Assistants" ("RPAs"), who are not physicians and could not render clinical findings or diagnoses. It continues that an RPA assists the radiologist by performing a preliminary review of films and data and may memorialize such review in draft radiology reports "but a physician must subsequently perform an independent

3

review of the radiology films and data before accepting the findings and diagnosis in the draft report and signing it." [*Id.*].

The indictment further alleges that in 2007, RSI obtained more than $5 million in revenue from contracts with facilities around the country. The indictment also states that RSI did not directly bill Medicare and private insurers; instead, RSI's contracts with its clients required the clients to bill Medicare and other insurers for the radiology tests and RSI-performed services, which often were referred to as the professional component of the test. [*Id.* at 2-3]. The clients then remitted to RSI either a flat monthly fee or fee per individual read, or a combination of both, depending on the compensation arrangement between RSI and the client. [*Id.* at 3]. The indictment described the billing to Medicare as typically by way of an electronic wire communication to a regional Medicare processing company, such as Cahaba GBA LCC. [*Id.* at 3].

The superseding indictment alleges that Reddy fraudulently signed and submitted radiology reports for approximately 40,000 patients to the hospitals and other RSI clients where neither he nor any other RSI physician had reviewed and analyzed the film. [*Id.*]. The indictment also alleges that RSI used software and remote data-sharing capabilities so that the RPAs and other employees did not have to be physically present

4

in RSI's office to access and review films and prepare radiology reports, including software that allowed RSI professionals to access film images taken at a hospital or other providers and other software that allowed a physician to dictate and sign a report to be sent to the provider. [*Id.* at 3-4]. The indictment then alleges:

[] For certain reports that he prepared, the Defendant . . . had a practice of having certain RPAs review the films first and prepare a draft report. Under the appropriate standard of care and in order to perform a legitimate physician's service, the Defendant should have confirmed the accuracy of the report by independently reviewing the images and the data, editing the draft report as necessary, and submitting the final report under his electronic signature.

[] However, on more that 40,000 occasions from May 2007 through January 2008, the Defendant signed and submitted radiology reports under his name in cases where neither he nor any other RSI physician ever reviewed the underlying films and data. In other words, the Defendant simply passed off the draft reports prepared by his RPAs as final radiology reports reviewed by a board-certified radiologist, without any physician review. This was true in over 90% of the reports signed by the Defendant during this period.

[] As the Defendant knew, the hospital or other RSI client then submitted bills to Medicare and private insurance companies for these tests, including for the supposed professional services of a qualified radiologist that never in fact occurred.

[] RSI received over $1.5 million during this time for these specific, fraudulent, reports, which were not actually reviewed by a physician.

5

[Doc. 23 at 4-5]. Counts 1 through 22 allege that in executing the scheme to defraud, the defendant caused to be submitted by a wire communication to a hospital a radiology report bearing his electronic signature, which transmissions are identified by date, client, patient's initials and type of service, i.e., X-ray, CT scan, etc. [*Id.* at 4-7].

As to the mail fraud counts, Counts 23 through 29, the superseding indictment re-alleges the scheme to defraud described in Counts 1 through 22, and then contends that in executing the scheme to defraud and to obtain money by means of false pretenses, the defendant caused the following payments to be mailed to him by the U.S. Postal Service, for payment for RSI invoices for monthly radiology services:

| Count | Date | Amount of check and period covered | Client |
|-------|------|-----------------------------------|--------|
| 23 | 10/4/07 | $113,180 for Sept. 2007 | Upson Medical |
| 24 | 11/08/07 | $109,315 for Oct. 2007 | Upson Medical |
| 25 | 8/15/07 | $46,451.61 for July 2007 | Columbus Diagnostic Center |
| 26 | 10/15/07 | $98,500 for Sept. 2007 | Columbus Diagnostic Center |
| 27 | 11/15/07 | $90,000 for Oct. 2007 | Columbus Diagnostic Center |
| 28 | 12/6/07 | $24,684 for Nov. 2007 | Southern Open MRI Center |
| 29 | 1/14/08 | $22,578 for Dec. 2007 | Southern Open MRI Center |

6

[Doc. 23 at 8].

Next, in Counts 30 through 33, after incorporating the scheme to defraud set forth in Counts 1 through 22, the indictment alleges that the defendant executed a health care fraud scheme by causing a claim for payment to be made by identified RSI-client hospitals from a health care benefit program for patients identified by their initials, which claims included services which were not in fact provided. [*Id.* at 9].

Finally, the superseding indictment alleges that in February 2008, the defendant falsified records in a federal investigation when he caused others to alter and falsify "access logs" maintained by RSI and to have these falsified records produced to the Department of Justice and the Department of Health and Human Services in response to a subpoena. [*Id.* at 9-10].

## II.    *Motions*

### A.    *Government's Motion for a Protective Order, [Doc. 5]*

Counsel have communicated with each other and reported to the Court on March 24, 2010, that they have represented to each other that any confidential patient information produced to the other party will be maintained confidentially, and will only be used and disseminated to third parties as necessary for trial preparation and ancillary

proceedings. This agreement satisfies the government's concerns about potential misuse of confidential patient information.

Accordingly, the motion for protective order, [Doc. 5], is **DENIED AS MOOT**.

**B.    *Reddy's motion for a bill of particulars, [Doc. 30]***

   *1.    Contentions of the parties*

In this motion, Reddy seeks a bill of particulars as to (1) the government's basis for claiming in Paragraph 2.D. of Counts 1-22 of the indictment that "a physician must subsequently perform an independent review of the radiology films and data before accepting the findings and diagnosis in the [RPA's] draft report and signing it," [Doc. 30 at 2 (quoting Doc. 1 at 2), 4]; (2) the source of the government's allegation that the appropriate standard of care in teleradiology required the defendant to confirm the accuracy of the RPA's report by independently reviewing the image and data, editing the report as necessary and submitting the report under his electronic signature, [Doc. 30 at 4-5]; and (3) the individuals described as "others" in Count 34 and the records that that count alleges were altered or falsified. [*Id.* at 5].

The government responds that by letter to defense counsel it will identify the persons described as "others" in Count 34, but that the remaining requests are not proper subjects for a bill of particulars. [*See* Doc. 41].

8

## 2.  Discussion

FED. R. CRIM. P. (7)(c)(1) provides that an indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. FED. R. CRIM. P. (7)(f) authorizes the Court to direct the government to file a bill of particulars.  The grant or denial of a bill of particulars rests within the sound discretion of the trial court.  *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987). The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars. *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998).  A mere statement that the defendant will be prejudiced without the bill is insufficient.  *See id.*

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  *United States v. Cole,* 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted).  A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation.  *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics in original).  Generalized discovery, however, is not an appropriate function of a bill

9

of particulars and is not a proper purpose in seeking the bill. *Id*. at 1442; *United States v. Colson,* 662 F.2d 1389, 1391 (11th Cir. 1981). Similarly, the Eleventh Circuit has held that a bill of particulars should not "automatically [be] accorded the status of a supplement to an indictment." *Anderson*, 799 F.2d at 1442.

Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources." *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Rosenthal,* 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds,* 801 F.2d 378 (11th Cir. 1986). A bill of particulars may be obtained to clarify an indictment, as long as it does not seek to determine in advance the government's proof. *United States v. Johnson*, 575 F.2d 1347 (5th Cir. 1978)[3]; *United States v. Smith*, 341 F. Supp. 687, 690 (N.D. Ga. 1972). However, the fact that an indictment conforms to the simple form suggested by the Federal Rules of Criminal Procedure, or accurately tracks the statutory or regulatory language, is no answer or defense to a motion for a bill of particulars, since Rule 7(f) presupposes a valid indictment or charge against the defendant. *See United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982) ("A bill of particulars may not save an

---

[3]      In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

invalid indictment[.]"). Instead, it is proper for a defendant to be furnished with further information regarding the charge when it is necessary for preparation of his defense and even though the granting of the motion requires the supplying of information "which in other circumstances would not be required because evidentiary in nature." *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954); *Carrier*, *supra* ("[A bill of particulars] may provide the defendant with the evidentiary details needed to establish his defense."). Even if in providing those details in a bill of particulars, the government's evidence or theories are somehow disclosed, the bill of particulars still might be proper. *United States v. Thevis*, 474 F. Supp. 117, 123 (N.D. Ga. 1979); *Smith*, 16 F.R.D. at 375; Wright, *Federal Practice and Procedure Criminal 2d* § 129. Finally, opposition to a bill of particulars is not properly made out by a claim that the defendant "'knows what he did, and, therefore, has all the information necessary.'" *United States v. Moore*, 57 F.R.D. 640, 643 (N.D. Ga. 1972) (quoting *Smith*, *id*.). With this background, the Court discusses each of the defendant's requests in turn.

> a.    *Basis of claim that physician must review images before submitting report*

This request, together with the next one, essentially seek the basis of the government's allegations that the defendant failed to adhere to a particular standard of

11

care. The standard of care is whether the physician acted "in accordance with a standard of medical practice generally recognized and accepted in the United States." *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008) (quoting *United States v. Williams*, 445 F.3d 1302, 1309 (11th Cir. 2006), *abrogated on other grounds*, *United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007) (*en banc*), and *United States v. Moore*, 423 U.S. 122, 139 (1975)).

The defendant's argument belies the need for a bill of particulars on this point. As he argues, "[i]f the government cannot prove that there must be physician review after an RPA looks at the film and <u>before</u> the report is submitted, then the government will not be able to prove its case." [Doc. 30 at 3 (emphasis in original)]. As the defendant recognizes, the allegation in the indictment of what a physician is supposed to do to satisfy the standard of care is a matter of proof. The government alleges with sufficient particularity what it claims to be the appropriate standard of care, i.e., that a physician review the film before the report is transmitted to RSI's client. The Court was advised at the pretrial conference that the government would rely upon expert witness testimony to establish the standard of care, and established a timetable for the production of Federal Rules of Criminal Procedure Rule 16(a)(1)(F) materials related to experts to the defendant, so that the Court preliminarily could resolve any issues as

12

to admissibility prior to certifying the case as ready for trial. [*See* Doc. 38]. Such

expert testimony has been recognized as appropriate in other criminal cases alleging

fraud in the health care industry. *See United States v. Gold*, 743 F.2d 800, 817

(11th Cir. 1984) (holding that because trial judge carefully instructed jury about weight

that should be given expert testimony such as that offered by a witness who had

received special training on Medicare, admission of expert's opinion as to whether

particular claims filed by defendants charged with Medicare fraud were eligible for

reimbursement under Medicare was proper); *see also United States v. Achille*,

277 Fed. Appx. 875, 878 (11th Cir. 2008) (unpublished) (district court did not err in

admitting the expert testimony of physician in a health care fraud case who testified,

among other things, that the treatment prescribed by a defendant for a specific patient

was not within the accepted standard of care for treatment of AIDS patients); *United*

*States v. Rosin*, 263 Fed. Appx. 16, 29-30 (11th Cir. 2008) (unpublished) (not improper

to admit testimony of government's expert witnesses regarding their own surgical

practices); *United States v. Feingold*, 454 F.3d 1001, 1007 (9th Cir. 2006) (noting that

the Supreme Court has ". . . allowed juries to assess the prevailing standards of care

among medical professionals in cases involving the criminal prosecution of licensed

practitioners") (citing *Moore*, 423 U.S. at 126, where the Court held that "[k]nowing

13

how doctors generally ought to act is essential for a jury to determine whether a practitioner has acted not as a doctor, or even as a bad doctor, but [. . .] without a legitimate medical justification.")).

A bill of particulars is not warranted to obtain elucidation of an indictment if the information is available from other sources. *Martell*, 906 F.2d at 558. Since the government has alleged what it contends is the appropriate standard of care for a teleradiologist to follow, and disclosed in its Rule 16(a)(1)(F) materials at least a summary of its expert witness's expected testimony on this issue, the defendant has obtained the information he seeks by way of a bill of particulars from other sources. Therefore, the bill of particulars as to the basis of the government's allegation that a physician must review the images before submitting the report to the client is **DENIED**.

> b.  *Source of allegation of appropriate standard of care*

This request is **DENIED** for the same reasons as stated in Section II.B.2.a. above.

AO 72A
(Rev.8/82)

*c.*     *Identity   of   "others"   and description of documents*

Since the government has agreed to identify by letter those persons it claims the defendant instructed to alter or fabricate records as alleged in Count 34, the motion for a bill of particulars on this point is **DENIED AS MOOT**.

Next, the defendant seeks the records which were altered or falsified.  He contends that the superseding indictment does not identify "which among the millions of entries in the access logs are the 'certain records' involved in this Count." [Doc. 30 at 5].  Although the government contends in its response generally that the defendant is in effect seeking an exhibit list, it does not otherwise specifically respond to his allegations.  [*See* Doc. 41].

The superseding indictment alleges that "access logs" were falsified and produced to the U.S. Department of Justice and U.S. Department of Health and Human Services in response to a January 29, 2008, subpoena.  [Doc. 23 at 10].  The government has not contradicted the defendant's claim that there are "millions of entries" in these logs that were produced, nor has it alleged that this claim was exaggerated.  In the case of fraud or perjury, it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents,

15

and the fraudulent statements within the documents.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (holding the trial court erred in failing to require government to specify documents which were falsified pursuant to request for bill of particulars); *United States v. Sampson*,  448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (noting that where indictment failed to state which specific documents were fraudulent, and what was allegedly fraudulent about the documents, bill of particulars was required so that defendant be put on notice as to the specific dates of the allegations, the documents, and what the false statements were within the documents); *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (holding that without prior knowledge of the specific documents have been allegedly falsified, defendants are unduly hampered in the preparation of their defense and there is the risk of unfair surprise).

In the present case, although the government alleges that a certain class of records ("access logs") were altered or falsified before they were produced pursuant to a subpoena, the indictment does not allege the nature of the alteration or falsification. The Court finds that based on the above-cited authorities, the defendant is entitled to a bill of particulars as to the nature of the alteration or falsification.  That is, the

AO 72A
(Rev.8/82)

government must particularize the nature of the alteration or falsification it is contending occurred in this case.

The Court recognizes (actually, it presumes) that the *Jencks* material will give the defendant notice that, for example, Witness A is expected to testify that (s)he was instructed to alter a particular portion of one or more access logs in one or more details. However, that information (particularly if it is not introduced until almost the time of trial) does not put the defendant on notice as to the type of alleged alteration or falsification against which he must defend.

Accordingly, within twenty-one (21) days of this Order and Report and Recommendation, the government shall produce to the defendant a bill of particulars which describes the nature of the alteration or falsification in the access logs which are the subject of Count 34. The Court is **not** directing the government to disclose the alteration or falsification of each document or record produced, but rather directing that the government generally state how it contends the access logs were altered or falsified. As examples only, if the government intends to prove at trial that access logs were altered or falsified as to whether a particular RSI employee or physician in fact reviewed films, then the government shall state in the bill of particulars that is how it claims the records were altered or falsified. On the other hand, if the government

contends that the access logs were altered or falsified to show that films were reviewed at a different time than when in fact they were reviewed, the government shall state in the bill of particulars that is how it contends the access logs were altered or falsified.

The Court recognizes that in discussing the defendant's motion as it relates to the standard of care issues, the Court found the government's presumed Rule 16(a)(1)(F) disclosures to be adequate substitutes for a bill of particulars, but in regards to this request, the government's *Jencks* Act disclosures are not adequate. The reason for the distinction is simple. As noted, the indictment sets out what the government contends is the appropriate standard of care for a teleradiologist, but does not describe the nature of any alleged alteration or falsification to the access logs.

Therefore, the defendant's motion for a bill of particulars, [Doc. 30], is **DENIED IN PART AND GRANTED IN PART**.

### C. *Reddy's motion to dismiss mail fraud counts or require election by government based on duplicitous mail fraud charges, [Doc. 31]*

#### 1. *Contentions of the Parties*

Reddy seeks dismissal of the mail fraud charges on grounds they are duplicitous, or alternatively to compel the government to elect which legal theory it will use as to these counts. He contends that while the indictment only alleges a single scheme to

defraud, the mail fraud allegations differ from the wire and health care fraud allegations in the indictment because the mail fraud counts lump together potentially thousands of individual patients and radiology reports in each charge, whereas the wire fraud and health care fraud counts pertain to individually identified patients and/or radiology reports. [Doc. 31 at 2-3]. He argues, for example, that the check alleged in Count 26 represents an entire month's worth of radiology reports submitted by RSI to the named client, however, there is no allegation elsewhere in the indictment that any individual radiology report was fraudulently submitted to this client. He continues that since the individual checks in the mail fraud counts represent thousands of individual radiology reports, he has no way discerning which individual radiology report is the fraudulent charge against which he must defend. [*Id.* at 3]. He then argues that bundling the reports together like this in the mail fraud counts is prejudicial, because it will compel him to justify each and every time during a specific month that he submitted a report to a hospital or diagnostic center. [*Id.* at 5]. He also contends that given the sheer number of reports transmitted every month which resulted in a check being paid to the defendant/RSI, it will be difficult for all jurors to unanimously agree for which report(s) was fraudulently submitted for which payment was made. [*Id.* at 6]. He therefore contends that the mail fraud charges are duplicitous because they lump together in a

19

single crime multiple radiology reports that the government claims are fraudulent. [*Id.* at 8]. He argues that as a result, the mail fraud counts should either be dismissed or the government should be compelled to elect to proceed on only one of the charges contained in each count. [*Id.* at 9].

The government opposes the motion, arguing that the mail fraud counts are not duplicitous because each count charges only a single offense based on one mailing. [Doc. 42 at 5, 6]. As for the defendant's argument that the indictment improperly lumps multiple fraudulently submitted reports into a single count, the government contends that it has not alleged that the checks were payment for fraudulently-submitted reports, but rather that these checks were mailed in furtherance of the defendant's fraudulent scheme. [*Id.*]. It further argues that it does not need to prove at trial that the mailings contained any false or fraudulent information or constituted payment for fraudulent bills because even mailings of routine innocent items devoid of lies in and of themselves constitute violations of the mail fraud statute if they were mailed to further the overall scheme to defraud. [*Id.*]. As for the defendant's argument that the way the mail fraud charges are drawn makes it nearly impossible for the jury to unanimously agree on which allegedly fraudulent report was covered by the individual check, the government argues that the reasoning of the case

20

relied upon by the defendant for the unanimity argument has been discredited if not overruled by a subsequent Supreme Court case holding that unanimity of the theory of the verdict was not necessary. [*Id.* at 6-7]. Further, the government argues that the defendant's argument that he will be prejudiced because he will have to justify the validity of the reports should be rejected because the defendant does not have to justify anything at trial. [*Id.* at 7]. Finally, the government argues that the mail fraud counts are properly pleaded and each count only charges a single mailing in furtherance of a fraudulent scheme. [*Id.* at 8].

In his reply, [Doc. 44], the defendant asks the Court to reject the government's "unit of prosecution" argument, contending that while each separate mailing during a scheme might form the basis of an individual mail fraud count, "this does <u>not</u> mean that thousands of frauds can be combined together simply because that single mailing requests payment for a group of allegedly fraudulent acts." [*Id.* at 1 (emphasis in original)]. He argues that the entire rationale for prohibiting duplicitous charges is to prevent the government from lumping together many fraudulent acts in a single mailing. [*Id.* at 1-2]. He also argues that this form of pleading creates a real risk that if he was acquitted, the government could seek a second indictment arguing it was a different falsity described in that single mailing. [*Id.* at 2].

2. *Discussion*

A count in an indictment is duplicitous if it charges two or more "separate and distinct" offenses. *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997); *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989).[4] The *Schlei* Court recognized that a duplicitous count poses three dangers: "(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." *Id.* (quoting *United States v. Wiles*, 102 F.3d 1043, 1061 (10th Cir. 1996) (finding no duplicity where the indictment merely alleged multiple means or methods of committing a single offense), *modified* 106 F.3d 1516 (10th Cir. 1997), *judgment vacated on other grounds United States v. Schleibaum*, 522 U.S. 945 (1997)). Under this analysis, the key issue to be determined is what conduct constitutes a single offense. *Schlei*, *id.* *Schlei* additionally directs that "[i]n determining the parameters of an offense, [a court] must look to congressional intent. 'It is Congress, and not the prosecution, which establishes and defines offenses.' . . . '[O]nce Congress has defined a statutory offense by its prescription of

---

[4] Duplicity is different from multiplicity, where an indictment charges a single offense in several counts. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976).

the "allowable unit of prosecution," that prescription determines the scope of protection afforded by a prior conviction or acquittal.' " *Id.* (citations omitted).

The Eleventh Circuit has made clear in interpreting 18 U.S.C. § 1341, " '[e]ach mailing in furtherance of a fraudulent scheme constitutes a separate violation of the mail fraud statute.' " *United States v. Williams*, 527 F.3d 1235, 1242 (11th Cir. 2008) (quoting *United States v. Edmondson*, 818 F.2d 768, 769 (11th Cir. 1987) (*per curiam*)). Since each mailing in furtherance of the scheme constitutes a separate violation of the mail fraud statute, Reddy's complaints that each count is duplicitous should be rejected. Each mail fraud count charges only one mailing in furtherance of the scheme to defraud. Binding precedent in the Eleventh Circuit recognizes that a count is not duplicitous if it alleges only a single scheme, even if it was consummated by a means of several false and fraudulent representations. *Pereira v. United States*, 202 F.2d 830, 834 (5th Cir. 1953) (mail fraud count not duplicitous where there was a single scheme to defraud the victim and get one sum of money for a hotel and another sum for oil leases); *Belt v. United States*, 73 F.2d 888, 889 (5th Cir. 1934). The fact that each check mailed to RSI represented payment for multiple reports which the government claims were fraudulently submitted does not render any particular mail fraud count duplicitous. Also, because each mail fraud count involves only the issue of whether the individual

mailing alleged therein was in furtherance of the defendant's scheme to defraud, the

defendant's concerns about the jury's difficulty/inability to unanimously agree on a

theory to base its verdict, even if such an argument is a valid ground to assert in a

motion to dismiss the indictment, has no application to this case.

In addition, the Court rejects the defendant's claims about the prejudice he claims

he will suffer as a result of how the indictment was pleaded. He argues that he will

have to justify each of the myriad reports submitted to the clients in order to defend the

mail fraud counts. However, the defendant has no burden to justify anything at trial.

In the mail fraud counts, he must defendant against the allegation that he attempted to

execute and executed a scheme and artifice to defraud, not each individually-submitted

report. More important, his argument - that to defend the mail fraud counts he will

have to justify each and every report submitted to the client - is fallacious, because

under the government's theory of the case, the reports themselves could not constitute

a violation of the mail fraud statute, since they were sent electronically, i.e, by wire

communication, not through the mail. Thus, the validity of the individual mail fraud

counts do not turn on whether one or two or all of the reports submitted to the

individual client were fraudulent or not, but whether the client's mailing of the check

to RSI was in furtherance of the defendant's scheme to defraud. Therefore, the mail

AO 72A
(Rev.8/82)

fraud counts are not duplicitous. *Cf. United States v. Roberts*, No. 05-CR-118, 2006 WL 3155866, *1 (E.D. Wis. Nov. 1, 2006) ("It is the scheme to defraud that is prohibited, and even if the defendant would have been entitled to benefits on some other basis, it would not be a defense to the charge that the scheme employed by the defendant was fraudulent.").

Therefore, the Court **RECOMMENDS** that the defendant's motion to dismiss Counts 1 through 22 on duplicitous grounds, [Doc. 31], be **DENIED**.

### D. *Reddy's motion to dismiss fraud counts for failure to allege an essential element, [Doc. 32]*

#### 1. *Contentions of the parties*

In this motion, Reddy claims that all of the fraud counts (i.e., Counts 1-33) are defective because they do not allege the essential element of "materiality" and do not identify either the fraud scheme or the victim who was defrauded. [Doc. 32 at 5]. As to materiality, he contends that it is an essential element of each of the fraud crimes charged, and that the failure to allege materiality violates his Fifth and Sixth Amendment rights. [*Id.* at 6]. He submits that the Supreme Court has held that a materiality requirement is implicitly contained in those federal statutes that use the common-law term "defraud" and thus materiality is an essential element of the fraud

25

charges in the superseding indictment. He points out that at least one federal appeals court, *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005), has reversed a post-*United States v. Neder*, 527 U.S. 1 (1999), conviction for failure to allege materiality in the indictment. [Doc. 32 at 7]. He recognizes that pre-*Neder* precedent in the Eleventh Circuit does not require an express allegation of materiality in a fraud count so long as the facts alleged in the indictment warrant an inference that the false statement is material. [*Id.* at 8]; *see United States v. McGough*, 510 F.2d 598, 602 (5th Cir. 1975); *see also United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009); *United States v. Fern*, 155 F.3d 1318 (11th Cir. 1998). [Doc. 32 at 7-8]. Nonetheless, he argues, the fraud charges in this case must be dismissed because the indictment does not use the word "material" and there is nothing in the indictment to assure the Court that the grand jury found that any false statements were "material." [*Id.* at 8-9]. He also argues that the facts alleged do not warrant an inference that the false statements were material, because the indictment does not allege that (1) Reddy's signing of RPA-reviewed reports was a false statement; (2) RSI's clients had any problems with this practice; or (3) the practice violated a component of any contractual relationship between RSI and its clients. [*Id.* at 9].

26

Reddy also argues that pursuant to *United States v. Bobo*, 344 F.3d 1076 (11th Cir. 2003), the indictment's failure to inform him of the scheme and the identity of the victim is fatal to the fraud counts. [*Id.* at 10-12]. He argues that like *Bobo* the present indictment does not allege what he was trying to get from the scheme that he otherwise was not entitled to receive. [*Id.* at 11]. Moreover, he contends that the indictment does not state that submitting the reports in the manner alleged was illegal or in violation of any contractual or legal provision. [*Id.* at 12]. He also complains that the indictment does not inform him who was victimized by the alleged scheme, whether it was RSI clients, patients, Medicare or some other individual or entity. [*Id.*].

In response, the government argues that the indictment adequately informs the defendant of the nature of the scheme and who was victimized, and otherwise passes constitutional muster. [Doc. 43 at 2]. It contends that Eleventh Circuit precedent stresses practical rather than technical considerations in determining an indictment's validity. [*Id.* at 3]. In this regard, the government submits that the indictment informs the defendant that (1) he was to receive either a flat monthly fee or fee per individual read, or a combination, and alleges the amount received for the fraudulent reports that were not actually reviewed by a physician, [*id.* at 3-4]; (2) he had RPAs review films first and prepare a draft report and that under the appropriate standard of care the

27

defendant should have confirmed the accuracy of the report by independently reviewing the images and data before submitting the report under his electronic signature, [*id.* at 4]; (3) RSI's clients paid RSI directly for these physician services, "yet were unaware the defendant had 'fraudulently signed and submitted radiology reports for approximately 40,000 patients to the hospitals ans other providers who were RSI clients, in cases where neither he nor any other RSI physician had ever reviewed and analyzed the film,' " [*id.* at 4 (quoting Doc. 23 at 4)]; and (4) "in reliance on the belief that the tests had been properly interpreted by the defendant, RSI's clients billed Medicare and other medical insurers." [*Id.* at 4].

The government also argues that the allegations of the indictment warrant an inference of "materiality." [*Id.* at 5]. The government acknowledges that materiality is an essential element of a mail fraud charge, citing *Neder*, 527 U.S. at 24, but argues that it satisfies its pleading burden if the facts alleged in the indictment warrant an inference of materiality. [*Id.*]. The government submits that in this case that standard is satisfied because the indictment alleges that (1) the defendant, through RSI, provided professional radiology services to hospitals, imaging centers and radiology groups, [*id.* at 5-6]; (2) these clients would electronically transmit films or other images from x-rays, MRIs, CT scans and other tests to RSI to review and prepare and send back a

AO 72A
(Rev.8/82)

final report; (3) in exchange, RSI obtained millions of dollars in revenue from contracts with these facilities; (4) under the appropriate standard of care and in order to perform a legitimate service the defendant should have reviewed and confirmed the accuracy of the reports by independently reviewing the images and data, making changes where necessary and submitting the final report under his own electronic signature; (5) on more than 40,000 occasions from May 2007 to January 2008, the defendant signed and submitted radiology reports under his name where neither he nor any other RSI physician had reviewed the underlying images or data; (6) instead, the defendant passed off the draft reports prepared by RPAs as final radiology reports reviewed by a board-certified radiologist without any physician review, [*id.* at 6]; and (7) "[i]n reliance on the accuracy of the reports, RSI's clients submitted bills to Medicare and private insurance companies for tests performed by RSI that included the professional services of a qualified radiologist. . . . In short, the defendant's client[s] acted under the belief that the defendant properly interpreted the tests. [*Id.* at 6-7]. The government then argues:

> The indictment makes plain what services the defendant and his company were contracted to perform, why he had a duty to perform those services, and how his clients relied directly on the false representations that the services had been performed. Moreover, the defendant's fraudulent representations were "material," if not critical, to the success of the

29

scheme itself. Clearly, if the healthcare facilities had known the defendant failed to review the tests, they would not have relied on their accuracy, billed Medicare and other insurers for these services or paid RSI for the professional services. In this context, the allegations are sufficient to warrant an inference of materiality and that the grand jury found the defendant's false representation to be material to the scheme itself. The indictment, therefore, is sufficient.

[*Id.* at 7].

Reddy replies that although the government contends that the superseding indictment alleges that RSI's clients relied on the belief that the tests had been properly interpreted by the defendant in billing Medicare and other medical insurers, the indictment in fact did not allege that RSI's clients relied upon the propriety of the reviews conducted in billing Medicare or other insurers, [Doc. 45 at 3], and contends that the indictment does not explain whether the scheme was supposedly designed to defraud Medicare, an insurance company, RSI's clients or the clients' patients. [*Id.*]. He contends that without an allegation as to whom the government contends was defrauded, the indictment fails to pass constitutional muster. [*Id.* at 3-4].

He also contends that the disconnect between the supposed scheme and an unidentified victim makes the Eleventh Circuit's *Bobo* decision particularly helpful in resolving his motion, because as in *Bobo*, the present indictment fails to describe the scheme to defraud or an identifiable victim. [*Id.* at 5].

30

Reddy then argues both that the allegations of the indictment are insufficient to warrant an inference of materiality, and that inferring materiality is unconstitutional. As to the latter argument, he argues that binding precedent from the Supreme Court[5] and the Eleventh Circuit[6] prohibits the inference of materiality, an essential element of the fraud charges. [*Id.* at 7-8]. He then argues that *McGough*, which involved a prosecution under 18 U.S.C. § 1001, conflicts with this precedent and should not be followed in this case.

### 2.    Discussion

"Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v.*

---

[5]    *Russell v. United States*, 369 U.S. 749, 765 (1962); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Miller*, 471 U.S. 130, 136 (1985); and *Apprendi v. United States*, 530 U.S. 466, 480 (2000).

[6]    *United States v. Steele*, 117 F.3d 1231, 1234 (11th Cir. 1997), *vacated* 147 F.3d 1316 (11th Cir. 1998); *United States v. Walker*, 342 F.3d 22, 26 (5th Cir. 1965); *Babb v. United States*, 168 F.2d 294, 295 (5th Cir. 1948). The initial *Steele* decision, which held that an indictment had to allege behavior outside scope of professional practice due to defendant's status as registered pharmacist, was vacated and replaced by a holding that an indictment of a practitioner for unlawfully dispensing controlled substances need not aver that it was done outside the course of professional practice. *Steele*, 147 F.3d at 1320.

AO 72A
(Rev.8/82)

*deVegter*, 198 F.3d 1324, 1326-27 (11th Cir. 1999) (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). The Court must determine whether the "factual allegations in the indictment, when viewed in the light most favorable to the government, [a]re sufficient to charge the offense as a matter of law." *Torkington*, 812 F.2d at 1354.

A grand jury indictment "must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *Bobo*, 344 F.3d at 1083 (quotation and brackets omitted). An indictment must set forth the essential elements of the offense. *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (*en banc*). "This rule serves two functions. First, it puts the defendant on notice of "the nature and cause of the accusation as required by the Sixth Amendment of the Constitution. Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime.' " *Fern*, 155 F.3d at 1324-25 (quoting *Gayle*, 967 F.2d at 485). An indictment omitting an essential element is defective. *See Bobo*, 355 F.3d at 1085-86; *United States v. Adkinson*, 135 F.3d 1363, 1378 (11th Cir. 1998); *United States v. Italiano*, 837 F.2d 1480, 1482 (11th Cir. 1988).

AO 72A
(Rev.8/82)

The defendant contends that the fraud charges in this case are defective for failing to allege four essential elements: materiality, the nature of the scheme, reliance by the victim, and identity of the victim. The Court addresses each in turn.

### a. Lack of express allegation of materiality

In *Neder*, the Supreme Court held that materiality of the falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes because the term "scheme or artifice to defraud" incorporates the well-settled common-law meaning of fraud and thus requires the prosecution to prove a misrepresentation or concealment of a material fact to support a conviction. *Neder*, 527 U.S. at 22-23, 25. Although the Eleventh Circuit has not confronted the issue, at least one court has held that *Neder* applies in the health fraud context. *See United States v. Cooper*, 283 F. Supp. 2d 1215, 1232 (D. Kan. 2003) ("The Supreme Court has held that a materiality requirement is implicitly contained in those federal statutes that use the common-law term of "defraud," such as 18 U.S.C. §§ 1341, 1343, 1344 and 1347.") (citing *Neder*, 527 U.S. at 22-23, and *Carter v. United States*, 530 U.S. 255, 266 (2000)).

The question then is whether the former Fifth Circuit's decision in *McGough*, which holds that "materiality" need not be pleaded in the indictment so long as the indictment warrants an inference of materiality, *McGough*, 510 F.2d at 602, is still good

33

law following the Supreme Court's pronouncement in *Neder*. The Court holds it is. The Eleventh Circuit has not had occasion to directly confront this issue. However, although the case did not involve the same statutes as here, the result in *Seher* indicates that the Eleventh Circuit would continue to apply *McGough* even after *Neher*. In *Seher*, the defendant challenged the indictment on the grounds that it failed to charge an offense because it did not identify the requisite state of mind necessary to violate 18 U.S.C. § 1956(a)(3). *Seher*, 562 F.3d at 1356. The *Seher* Court rejected the argument, holding:

> We will not uphold a criminal conviction "if the indictment upon which it is based does not set forth the essential elements of the offense." *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (*en banc*). "[I]f the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge," the indictment satisfies the Fifth Amendment. *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998). Additionally, we need not find an indictment "defective simply because it fails to allege mens rea so long as the allegation that the crime was committed with the requisite state of mind may be inferred from other allegations in the indictment." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (quotation marks and citation omitted). As a general rule, "practical, rather than technical, considerations govern the validity of an indictment." *United States v. Hooshmand*, 931 F.2d 725, 735 (11th Cir. 1991) (quotation marks and citation omitted).

*Seher*, 562 F.3d at 1356.

34

Moreover, the majority of courts that have directly considered a challenge to a mail/wire/health care fraud prosecutions after *Neder* on the grounds that materiality was not alleged in the indictment have continued to follow *McGough*. *See United States v. McAuliffe*, 490 F.3d 526, 532 (6th Cir. 2007) (citing *McGough*, 510 F.2d at 602); *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002) (citing *McGough, id.*); *see also United States v. Siegelman*, No. 2:05-cr-119-MEF, 2006 WL 680566, *2 (M.D. Ala. Mar. 15, 2006); *United States v. Chase*, No. 2:04-CR-135, 2005 WL 3288731, *6 (D. Vt. Nov. 30, 2005) (noting that "while an indictment need not spell out a theory in explicit detail, it must nonetheless allege facts that would support an inference of materiality"); *Cooper*, 283 F. Supp. 2d at 1283 (citing *Bieganowski, id.*, and *McGough, id.*). *But see Omen*, 395 F.3d at 1089.

Second, although *McGough* may have been decided in reference to a prosecution under 18 U.S.C. § 1001, its rule has been applied by the former Fifth Circuit and the Eleventh Circuit in other contexts. *United States v. Goodman*, 605 F.2d 870, 886 (5th Cir. 1979) (controlled substances); *Fern*, 155 F.3d at 1325 (Clean Water Act false statement). Although these cases do not overwhelmingly establish *McGough*'s universal application in cases not involving § 1001, this Court is not authorized to disregard binding Eleventh Circuit case law. *See United States v. Adams*, 316 F.3d

1196,1197 n.1 (11th Cir. 2003) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.") (quoting *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997)). *Cf. United States v. Greer*, 440 F.3d 1267, 1275-76 (11th Cir. 2006) (holding that Eleventh Circuit not free to decide case on prediction that Supreme Court will overrule one of its precedents). The Court is unable to predict that the Eleventh Circuit would hold *McGough* inapplicable to this case following *Neder*.[7]

Therefore, although the government obviously could have and should have drafted a more technically precise indictment for the grand jury's consideration,[8] the Court concludes that *McGough* compels the conclusion in this case that the indictment's failure to expressly allege materiality in this case is not *per se* fatal.

---

[7]     The Court additionally notes that in *Neder*, the Supreme Court reversed the Eleventh Circuit's judgment because even though the materiality element was alleged in the indictment, the trial court did not submit the materiality issue to the jury. *See Neder*, 527 U.S. at 6.

[8]     The government should heed Justice Scalia's warning in *United States v. Omer*, 549 U.S. 1174, 1174 (2007) (Scalia, J., statement respecting the denial of the petition for writ of certiorari).

AO 72A
(Rev.8/82)

### b.    Inference of materiality

The Court next concludes that the indictment sufficiently establishes an inference of materiality to bring the indictment into compliance with *McGough*.  The indictment alleges that Reddy, through RSI, contracted with hospitals, imaging centers and others to review and interpret X-rays, CT scans and other diagnostic tests and provide a report to the client.  In exchange, the client would bill Medicare or private health insurers for RSI's services, and remit the proceeds to RSI.  The indictment alleges that the standard of care for radiologists is for the physician to personally review the films and images before signing off on the final report containing findings and diagnoses.  It further alleges that on approximately 40,000 occasions, neither Reddy nor any other RSI physician independently reviewed the underlying images, and instead relied on non-physicians (RPAs) to review the films and draft the report for the client.  According to the indictment, RSI received approximately $1.5 million of the approximately $5 million it billed in 2007 from submitting reports to clients that were not reviewed by an RSI physician.  These allegations are sufficient to infer materiality.  *See Bieganowski*, 313 F.3d at 286 (holding allegation in indictment that defendant committed fraud by falsely describing his services as including the use of a particular piece of equipment formed sufficient basis for defendant to infer that the Government

would attempt to prove that such a misstatement was material); *United States v. Solomon*, 273 F.3d 1108, 2001 WL 1131955, *2 (5th Cir. 2001) (Table) (allegation of loss of over $1 million created inference of materiality).

### c. Nature of the scheme

For the same reasons, the indictment adequately pleads a scheme and artifice to defraud sufficient to demonstrate that the grand jury had probable cause as to all of the elements of the offense and to place Reddy on notice of what he must defend against. Again, the indictment could have been drawn more precisely, but "practical, rather than technical, considerations govern the validity of an indictment." *Hooshmand*, 931 F.2d at 735 (quotation marks and citation omitted). The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud; and, (2) the use of the interstate mails or wires in furtherance of that scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citations omitted). To obtain a conviction for health care fraud under 18 U.S.C. § 1347, the government must prove that the defendant knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items or services by means of material, fraudulent representations. *Cf. United States v. Akers*, 215 F.3d 1089, 1101 (10th Cir. 2000). A scheme to defraud

AO 72A
(Rev.8/82)

requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. *United States v. Svete*, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009) (*en banc*); *United States v. Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003) (internal citations omitted). A misrepresentation is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed." *Hasson*, 333 F.3d at 1271.

Under this framework, the indictment is sufficient to set out the scheme to defraud for the mail, wire and health care fraud counts. Again, the indictment alleges that Reddy, through RSI, contracted with hospitals, imaging centers and others to review and interpret X-rays, CT scans and other diagnostic tests and provide a report to the client. In exchange, the client would bill Medicare or private health insurers for RSI's services, and remit the proceeds to RSI. The indictment alleges that the standard of care for radiologists is for the physician to personally review the films and images before signing off on the final report containing findings and diagnoses. The indictment further alleges that on approximately 40,000 occasions, neither Reddy nor any other RSI physician independently reviewed the underlying images, and instead relied on non-physicians (RPAs) to review the films and draft the report for the client. According to the indictment, RSI received approximately $1.5 million in 2007 from

clients (who had billed Medicare or private health insurers for payment for RSI's services) for the reports that were not reviewed by an RSI physician. These allegations sufficiently describe the nature of the scheme to defraud.

This current case is easily distinguished from *Bobo*. In that case, the defendant was an ER doctor and medical director at the Alabama Fire College. He and other doctors created a corporation (NHS) which provided primary medical care to patients who otherwise would use the emergency room. The State of Alabama established a Maternity Care Program ("MCP") to deal with the state's high infant mortality rate and low level of prenatal care for pregnant women on Medicaid. That program included a Maternity Waiver Program ("MWP"), which waives certain Medicaid requirements in exchange for an established network of services, specific doctors, hospitals, and other medical providers in a number of districts throughout the state. The Alabama Medicaid Agency released ITBs ("invitations to bid") for potential providers for the MWP, which required the bidders to provide detailed documentation regarding access to care, participating hospitals, average care time devoted to each patient, and other pertinent information. The bidders provided this information via contracts or signed letters of intent as to the cost to deliver one child, including comprehensive prenatal care, education, and postpartum care. NHS submitted bids for most of the districts and won

40

some over a rival group, AHN, a consortium of hospitals and clinics, including Capstone Health Services Foundation, which was created specifically to bid on contracts. NHS's bid was accepted for District 4, despite it being the high bidder. AHN was selected for District 7. However, the Agency decided to re-bid District 4 due to irregularities in the bidding process.

Count I of the indictment charged that Bobo

did unlawfully, willfully, and knowingly combine, conspire, confederate and agree [with others known and unknown] to . . . knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, that is, the Maternity Care Program being administered by the Alabama Medicaid Agency, and financed by the Health Care Financing Administration of the United States Department of Health and Human Services and the state of Alabama, in violation of Title 18, United States Code, Section 1347(1).

In support of this count, under "manner and means," the government alleged that Bobo offered to pay AHN $800,000 for each year of the MWP if it would refrain from submitting a rebid on District 4 and give up its contract in District 7, and that this offer was part of the scheme and artifice to defraud. The indictment listed as the overt acts telephone calls Bobo made to others relaying this offer. In Count II, the indictment incorporated the information supporting Count I and charged that Bobo

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefits program, that is the Maternity

41

Care Program, operated by the Alabama Medicaid Agency and financed by the Health Care Financing Administration of the United States Department of Health and Human Services and the state of Alabama, in violation of Title 18, United States Code, Section 1347(1).

*Bobo*, 344 F.3d at 1083-84.

Among other infirmities, the *Bobo* Court found the indictment defective because "[n]ot only does the indictment fail to mention a fraud in connection with the delivery or payment of health care benefits, items, or services in Counts I and II, but it also fails to specify of what precisely Dr. Bobo was allegedly trying to defraud the MWP program: benefits, items, services, or money." *Id.* at 1084. It noted that it could have alleged the benefits, items or services could have been the difference in the bids from the prior round of bids or the money Bobo claimed he could get from the legislature for Capstone, but instead the indictment only generally set forth allegations of fraud without the required specificity. *Id.* The Court also faulted the indictment for failing to specify what the government contended was unlawful, although at trial the government alternatively stated that the $800,000 was a bribe or bid-rigging. *Id.*

The present indictment does not suffer from the same or similar defects. The indictment incorporates the standard of care the government contends was violated by the defendant's alleged submission of reports that no physician had reviewed. It then

states that the defendant did not follow this standard of care for the radiology examinations, which resulted in him fraudulently claiming an entitlement to and receiving compensation for services not performed. The nature of the alleged fraud scheme is therefore sufficiently specific.

The present indictment also differs form the one found wanting in *Bobo* in that it also adequately describes the identities of victims, although as seen below, the identity of a victim is not an element of either mail, wire or health care fraud. By alleging that RSI's contracts provided that its clients would bill Medicare and private insurers for RSI's services (which the indictment alleges were not performed), the indictment sufficiently identifies at a minimum as victims RSI's clients (who were remitting funds to RSI in payment for services they were not receiving) and Medicare and the private insurers (who were paying RSI's clients for services they though the clients were providing patients).

### d. Reliance

Reddy correctly points out that, contrary to the government's arguments, the indictment does not allege that RSI's clients relied, reasonably or otherwise, on any misrepresentation that a RSI-physician reviewed the films and images before submitting the final report to the clients. However, the absence of such an allegation

in the indictment is not fatal to it validity. "The common-law requirements of 'justifiable reliance' . . . for example, plainly ha[s] no place in the federal fraud statutes because Congress prohibited the 'scheme to defraud,' rather than the completed fraud." *Svete*, 556 F.3d at 1164 (quoting *Neder*, 527 U.S. at 24-25) (quotation marks altered); *see also United States v. Yeager*, 331 F.3d 1216, 1221 (11th Cir. 2003) (proof of actual reliance by the victim is not required). Therefore, this challenge is rejected.

### e.    Identity of victim(s)

The Court also concludes that the indictment is not fatal for not describing who were the victims of the defendant's scheme. "The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."[9] *United States v. Munoz*, 430 F.3d 1357, 1369 (11th Cir. 2995) (quoting *United States v. Henningsen*, 387 F.3d 585, 590 (7th Cir. 2004)); *see also United States v. Loayza*, 107 F.3d 257, 260-61 (4th Cir. 1997); *United States v. Mizyed*, 927 F.2d 979, 981 (7th Cir. 1991); *United States v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991). The focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud, not

---

[9]    Wire fraud also does not have a victim-identity element. *See Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses . . . .").

44

upon any particular kind of victim. The identity of the fraud victims is not an essential element of the crime of mail fraud. This is because the focus of the fraud statutes is on the defendant's intent and not the victim. *See Svete*, 565 F.3d at 1165 ("The focus of the language defining a scheme to defraud is on the violator, not the victim.") (citation omitted). Therefore, the defendant's arguments as to a lack of an identifiable victim for the mail and wire fraud counts should be rejected. In addition, since the gist of a health care fraud scheme is a *claim* of payment from a health care benefit program, the indictment need not specifically identify a victim for those counts either.

For the above reasons, the undersigned **RECOMMENDS** that the defendant's motion to dismiss the fraud counts for failure to allege essential elements, [Doc. 32], be **DENIED**.

### E. *Reddy's motion to dismiss Count 34 concerning alleged falsification of records, [Doc. 33]*

In this motion, Reddy alleges that 18 U.S.C. § 1519 does not cover electronic records such as the "access logs" alleged to be altered or falsified in Court 34. That code section provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or

45

agency of the United States or any case filed under title 11, or in relation
to or contemplation of any such matter or case, shall be fined under this
title, imprisoned not more than 20 years, or both.

*Id.*

In support of this argument, Reddy contends that a statute enacted at the same
time, 18 U.S.C. § 1520(b), describes the materials covered by that statute's prohibitions
as "records (including electronic records)." He therefore argues that Congress must
have limited "records" in § 1519 to paper records. [Doc. 33 at 4]. The government
opposes the motion on the grounds that the statutory language is clear and all-inclusive,
and argues that §§ 1519 and 1520 are different statutes covering completely different
topics. [Doc. 40 at 3-5].

Where a term is not defined within statute, analysis begins with term's plain and
unambiguous meaning. *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006).
Also, where the language of a statute is clear, resort to legislative history is not
appropriate. *United States v. Gonzalez*, 520 U.S. 1, 6 (1997); *United States v. Williams*,
425 F.3d 987, 989 (11th Cir. 2005).

The short answer to the defendant's argument is that there is nothing limiting,
ambiguous or cryptic about the term "any record." "Read naturally, the word 'any' a

has an expansive meaning, that is 'one or some indiscriminately of whatever kind.' "
*Gonzalez*, 520 U.S. at 5.

Also, the Court agrees with the government that §§ 1519 and 1520 cover different topics.  Section 1519 is a broad proscription against the destruction of records in relation to an investigation or proper administration "of any matter within the jurisdiction of any department or agency of the United States . . . ."  18 U.S.C. § 1519. On the other hand, § 1520 requires an accountant who conducts an audit of certain issuers of securities to maintain "all audit or review workpapers" for a period of five years, and directs the SEC to promulgate regulations "as are reasonably necessary, relating to the retention of relevant records such as workpapers, documents that form the basis of an audit or review, memoranda, correspondence, communications, other documents, and records (including electronic records) which are created, sent, or received in connection with an audit or review and contain conclusions, opinions, analyses, or financial data relating to such an audit or review."  18 U.S.C. § 1520(a)(1),(2).  The statute at issue here describes what an individual cannot destroy.  The statute upon which the defendant bases his argument requires the SEC to promulgate regulations as to what materials accountants must maintain and for

47

how long.  The latter statute does not refer to or otherwise relate to the former, and therefore its use of different language shines no light on an already clear statute.

As a result, Count 34 is not subject to dismissal, and the undersigned **RECOMMENDS** that the defendant's motion to dismiss, [Doc. 33], be **DENIED**.

**III.    Conclusion**

For all the above and foregoing reasons, the undersigned **DENIES AS MOOT** the motion for protective order, [Doc. 5]; **DENIES IN PART AND GRANTS IN PART** the motion for a bill of particulars, [Doc. 30], and **RECOMMENDS** that the motions to dismiss, [Docs. 31, 32, 33], be **DENIED**.

**IT IS SO ORDERED and RECOMMENDED**, this 5th day of  April , 2010.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)