**FILED IN CHAMBERS**
U.S.D.C. - Atlanta

**AUG 1 1 2010**

James N. Hatten, Clerk
By: _a · m · Causey_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

RAJASHAKHER P. REDDY

CRIMINAL CASE NO.

1:09-CR-483-ODE

ORDER

This criminal case is before the Court on Defendant
Rajashakher P. Reddy's objections [Doc. 56] to Magistrate Judge
Alan Baverman's Report and Recommendation ("R&R") [Doc. 49].
Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de
novo review of those portions of the R&R to which Defendant has
timely and specifically objected. The Court may accept, reject,
or modify, in whole or in part, the findings and recommendations
made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States
v. Raddatz, 447 U.S. 667, 673-74 (1980).

Defendant has objected to Magistrate Judge Baverman's
recommendations regarding the following motions: (1) Defendant's
motion for a bill of particulars; (2) Defendant's motion to
dismiss the mail fraud counts 26ss-32ss of the indictment, or
alternatively to require election by the Government [Doc. 31]; (3)
Defendant's motion to dismiss the fraud charges on the grounds
that the Government failed to allege an essential element in the
indictment [Doc. 32]; and (4) Defendant's motion to dismiss Count
37ss concerning his alleged falsification of records [Doc. 33].[1]

_____

[1]Defendant also objected to the R&R insofar as it partly
denied his request for a bill of particulars regarding several of
the Government's allegations [Doc. 56 at 1-5]. However, that non-

For the following reasons, Defendant's objections are OVERRULED and Magistrate Judge Baverman's R&R [Doc. 49] is adopted as modified; specifically, the R&R is adopted except for pages 35-45, which contain analysis rendered moot by the second superceding indictment. Accordingly, Defendant's motion for a bill of particulars [Doc. 30] is DENIED IN PART and GRANTED IN PART and the motions to dismiss [Doc. 31; Doc. 32; Doc. 33] are DENIED.[2]

I.   Background

As noted by Defendant, "[t]he 48-page R&R correctly lays out the background for these motions and the positions of each party." [Doc. 56 at 1]. As such, the Court will only briefly restate the facts of this case before addressing the pending motions and Defendant's objections to the R&R [Doc. 49]. The following is a summary of the allegations contained in the indictment [Doc. 23; Doc. 27],[3] as described by Magistrate Judge Baverman in the R&R [Doc. 49].

---

dispositive motion has not been submitted to the Court for review, and thus Defendant's objections regarding this matter will not be addressed herein.

[2]The R&R also denies the Government's motion for a protective order [Doc. 5] as moot due to an agreement reached by the parties. There are no objections to this holding. The Court therefore adopts the R&R and DENIES AS MOOT the Government's motion for a protective order [Doc. 5].

[3]At the time that both Defendant's motions and the R&R were filed, the most current indictment was the first superseding indictment issued on December 2, 2009 [Doc. 23]. The second superseding indictment was filed just recently on July 13, 2010 [Doc. 67]. Although largely the same as the first, the second superseding indictment contains some key additions and alterations that will be discussed further below.

Defendant is a board-certified radiologist who owns and operates Reddy Solutions, Inc. ("RSI"), a company offering around-the-clock professional radiology services to various healthcare facilities [Doc. 49, at 5].  Essentially, the hospital or other facility sends its X-Rays, Magnetic Resonance Images, CT Scans and other imaging tests via electronic transmissions to RSI, so that Defendant, or an RSI-contract radiologist, can review them for a fee and then provide the client with a diagnostic report [Id.]. Clients would then bill Medicare or other insurers for RSI's "professional services" [Id., at 6].  Although RSI employs "Radiology Practice Assistants" ("RPAs") to assist the radiologists and draft preliminary reports, RPAs are not physicians and cannot render clinical findings or diagnoses [Id.]. Rather, "a physician must . . . perform an independent review of the radiology films and data before accepting the findings and diagnosis in the draft report and signing it." [Id.].

The indictment alleges that Defendant fraudulently signed and submitted radiology reports for approximately 40,000 patients to the hospitals and other RSI clients where neither he nor any other RSI physician had reviewed and analyzed the film [Id.]. Instead, it is alleged that Defendant simply signed and submitted reports drafted by the RPAs without checking their accuracy, thus fraudulently passing off the RPAs' preliminary reports as final radiology reports prepared by a board-certified radiologist [Id. at 7].  Defendant allegedly received over $1.5 million for this scheme [Id.].

In total, the indictment charges Defendant with multiple counts of wire fraud under 18 U.S.C. § 1343, mail fraud under 18

U.S.C. § 1341, health care fraud under 18 U.S.C. § 1347, and falsification of records in a federal investigation under 18 U.S.C. § 1519. Defendant has challenged the sufficiency of all the charges contained in the indictment through several motions to dismiss [Doc. 31; Doc. 32; Doc. 33], which were first addressed in the R&R [Doc. 49] and are now before the Court on Defendant's objections [Doc. 56].

II. Discussion

    A.    Motion for a Bill of Particulars

Defendant seeks a bill of particulars as to (1) the Government's basis for claiming that "a physician must subsequently perform an independent review of the radiology films and data before accepting the findings and diagnosis in the [RPA's] draft report and signing it"; (2) the source of the Government's allegation that the appropriate standard of care in teleradiology required Defendant to confirm the accuracy of the RPA's report by independently reviewing the image and data, editing the report as necessary and submitting the report under his electronic signature; and (3) the individuals described as "others" in Count 34 and the records which that count alleges were altered or falsified [Doc. 30 at 2, 4-5].

The R&R denies this motion as to the first two requests because the indictment sets out what the Government contends is the appropriate standard of care for a teleradiologist, and because the information Defendant seeks is available in the Government's disclosures of expert witness testimony. See United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990) (finding that a bill of particulars is not warranted to obtain elucidation

4

of an indictment if the information is available from other sources). The R&R denies the motion as to the third request to the extent it seeks identification of the "others" because the Government agreed to identify those persons by letter [Doc. 49 at 17]. As to the request for identification of the records allegedly altered or falsified, the R&R directs the Government to file a bill of particulars containing a statement of how it contends the access logs were altered or falsified [Id. at 19-20]. The Government filed this bill of particulars on June 1, 2010 [Doc. 61].

Defendant objects to the R&R's denial of a bill of particulars regarding the standard of care alleged in the indictment and the source of that standard of care. Defendant contends that he "is entitled to a particular that precisely identifies the source of the allegation that he was obligated to look at an already-reviewed image before billing" and that "[t]he indictment needs to lay out concretely and precisely why the government alleges that Dr. Reddy did not meet this "'standard of care'." [Doc. 56 at 4]. However, as the R&R clearly sets out, the Government's "source of the allegation" is the standard of care itself, which is set out in the indictment, and the reasons why Defendant failed to adhere to that standard will be set forth in expert witness testimony disclosed pursuant to Federal Rule of Criminal Procedure 16(a)(1). Since this information is already available to Defendant, no bill of particulars is required. The Court therefore overrules Defendant's objections.

B. <u>Motion to Dismiss Mail Fraud Counts 26ss-32ss,</u> [4] <u>or to</u>
<u>Require Election by Government Based on Duplicitous</u>
<u>Charges [Doc. 31]</u>

Defendant has been charged with seven counts of mail fraud in
furtherance of his alleged scheme [Doc. 67 at 8-9]. Each count in
the indictment is listed by date, along with the amount paid to
RSI for its radiology services and the name of the hospital client
who mailed the payment in the form of a check [<u>Id.</u>]. Defendant
"contends that while the indictment only alleges a single scheme
to defraud, the mail fraud counts lump together potentially
thousands of individual . . . reports in each charge." [Doc. 49
at 20-21]. Therefore, Defendant argues, "he has no way [of]
discerning which individual radiology report is the fraudulent
charge against which he must defend." Because there could
potentially be multiple fraudulent reports that were paid for by
a single check, and thus covered in a single count in the
indictment, Defendant maintains that these counts are duplicitous
and must be dismissed [Doc. 31 at 8]. In the alternative,
Defendant asks that the Government be required to identify
specifically which reports it alleges were fraudulent and paid for
by the checks listed in each count [<u>Id.</u>].

The R&R recommends denying Defendant's motion [Doc. 49 at
27]. Noting that "[a] count in an indictment is duplicitous if it
charges two or more 'separate and distinct' offenses," [<u>Id.</u> at 24]
(citation omitted), Magistrate Judge Baverman correctly reasons
that because "each mailing in furtherance of the scheme
constitutes a separate violation of the mail fraud statute,

---

[4]Counts 23s-29s in first superseding indictment [Doc. 23].

[Defendant's] complaints that each count is duplicitous should be rejected.   Each mail fraud count charges only one mailing in furtherance of the scheme to defraud." [Id. at 25].   That is, "the validity of the individual mail fraud counts do not turn on whether one or two or all of the reports submitted to the individual client were fraudulent or not, but whether the client's mailing of the check . . . was in furtherance of the defendant's scheme to defraud." [Id. at 26].   Therefore, the R&R concludes, the mail fraud charges are not duplicitous [Id. at 27].

Defendant objects that "[t]o the contrary, this is duplicity, plain and simple." [Doc. 56 at 5].   Citing   United States v. Schlei, 122 F.3d 944 (11th Cir. 1997), Defendant accurately describes the three main problems that duplicitous charges can cause:

> First, a jury might convict without unanimously deciding the facts that support the verdict.   Second, the defendant can be prejudiced by a duplicitous indictment if he prevails at trial and tries to argue double jeopardy if the prosecution comes after him again.   The final vice . . . is that such charges cause great difficulties for the trial judge [regarding the admissibility of evidence].

[Id. at 6-7].   Next, focusing on the unanimity problem, Defendant points to the case of United States v. Ballard, 663 F.2d 534, 544 (5th Cir. 1981), for the proposition that "[b]ecause it is impossible to determine whether all of the jurors agreed that [the defendant] committed one of the acts which could properly support the convictions on mail fraud . . . he was deprived of a unanimous jury verdict . . . ." [ Id. at 7].   Based on this potential deprivation, Defendant argues that the present indictment should be dismissed because it suffers from the same problems found in

7

Ballard.   To wit, that "[u]nless and until the government
identifies the supposedly fraudulent bills paid for by these six
checks, neither the Defendant nor the Court can know if the
government has submitted sufficient evidence, what evidence is
relevant to the charges, and what sort of jury instructions should
be crafted."  [Id. at 8].

     Defendant's  objections  are  without  merit.  Defendant's
emphasis on the proof required to support the mail fraud charges
(i.e. the specific fraudulent reports that were allegedly covered
by the single payment in each count) is misplaced.  To reiterate
the R&R, "[a] count in an indictment is duplicitous if it charges
two or more 'separate and distinct' offenses" [Doc. 49 at 24], and
"[e]ach mailing in furtherance of a fraudulent scheme constitutes
a separate violation of the mail fraud statute" [Id. at 25].   In
the instant case, each count covers a single mailing of a payment
that is alleged to have been in furtherance of Defendant's scheme
to defraud.   That is, the indictment alleges  one violation per
count, and therefore the charges are not duplicitous.

     To address Defendant's objections directly, none of the
problems associated with duplicitous charges threaten to arise in
this case.  First, the problem of ensuring juror unanimity is not
an issue here as it was in  Ballard.   In that complex case, the
mail fraud charges against the defendant could have been supported
by a finding that he committed one, or both, of two distinct and
separate acts.   See Ballard, 663 F.2d at 544.   Namely, that he
"perpetrated a fraud . . . [either] through his own concealment or
through his payments to [another party]."  Id. (emphasis added).
Hence, there was no way to ensure that the jurors unanimously

8

found him guilty of engaging in the same particular fraudulent act.

By contrast, the scheme alleged in the instant case is straightforward and based on a single underlying act--the knowing submission of unverified reports to RSI's clients.[5] As such, so long as each juror finds that at least one of the reports covered by a given payment was fraudulent, then whether the verdict of any particular juror on a single count is based on the same report as the other jurors is immaterial. Indeed, even if the jurors should disagree entirely on which particular reports were fraudulent, a unanimous verdict will nonetheless result so long as each juror agrees on the fact that the payment in question was mailed pursuant to some fraudulent report in furtherance of the overall scheme. Thus, the fact that "each check represents payment for thousands of individual bills" [Doc. 56 at 5] may complicate matters but does not render the charge itself duplicitous.

The other problems with duplicitous indictments are similarly absent in this case. There is no threat of double jeopardy for

---

[5]A comparison to the duplicitous counts in Ballard would only be appropriate here if there were some other allegedly fraudulent action that was proposed to support each mail fraud charge against Defendant. As a hypothetical example, one could imagine a case where the defendant was alleged in a single count to have committed mail fraud either because he solicited payments for radiology reports that he did not personally examine, or because he did examine them but knowingly overcharged for them, so as to defraud Medicaid and also pay kickbacks to a third-party actor to keep his scheme from being discovered. In that case, as opposed to the instant one, jurors could base a single guilty verdict on two entirely separate and distinct fraudulent acts, thus destroying the certainty in unanimity.

9

Defendant, as each count is for a single payment and should Defendant prevail at trial, he cannot later be charged with mail fraud for any of the payments alleged in the indictment. Finally, on the admissibility of evidence, the Court foresees no particularly exceptional difficulties for a trial judge in presiding over these charges. While Defendant may be correct in his assertion that "[u]nless and until the government identifies the supposedly fraudulent bills . . . neither the Defendant nor the Court can know if the government has submitted sufficient evidence, what evidence is relevant to the charges, and what sort of jury instructions should be crafted" [Doc. 56 at 8], these are all issues for trial and add nothing to the argument that the counts in the indictment itself are duplicitous.

Therefore, Defendant's objections to the R&R on this matter are overruled, the R&R's resolution of this motion [Doc. 31] is adopted, and Defendant's motion to dismiss based on duplicitous mail fraud charges is denied.

C.  Motion to Dismiss for Failure to Allege an Essential Element [Doc. 32]

Defendant asserts in his motion [Doc. 32] and re-asserts in his objections [Doc. 56] that "the fraud charges do not allege that anything the Defendant did or did not do was 'material'." [Id. at 8].  Defendant further objects that the indictment "fail[s] to adequately describe [the] scheme to defraud" [Id. at 17], in that it "never says what [Defendant] was trying to get via this supposed scheme" [Id. at 18] and it "fails to say that th[e] submitting of reports was illegal" [Id. at 19]. Lastly, Defendant contends that the indictment "fail[s] to identify who was

10

supposedly defrauded," and then reasons that "[a] scheme that does not explain who was defrauded is simply not a scheme to defraud." [Id. at 20] (quotation marks omitted). However, while these objections may or may not have been valid at the time they were filed on May 3, 2010, the primary objection (i.e. failure to allege materiality) has been rendered moot by the Government's second superseding indictment [Doc. 67] filed on July 13, 2010.[6] Moreover, given the language of the second superseding indictment, the remainder of Defendant's objections regarding this motion can be quickly dismissed.

The second superceding indictment specifically alleges that Defendant

> knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of <u>materially</u> false and fraudulent pretenses, representations, promises, and by omissions of <u>material</u> facts, that is, by claiming to have performed health care services when he did not in fact perform such health care services, well knowing and having reason to know that said <u>materially</u> false pretenses, representations, and promises were and would be false and fraudulent when made and that said omissions were and would be <u>material</u>.[7]

_____

[6]Thankfully, the Government appears to have heeded Magistrate Judge Baverman's advice that it "could have and should have drafted a more technically precise indictment for the grand jury's consideration" [Doc. 49 at 36], and thus obviated the need for the Court to engage the difficult question of whether materiality can be "inferred" in a fraud charge when it has not been specifically alleged. See R&R [Doc. 49 at 35-45]; Defendant's objections [Doc. 56 at 8-20]. Therefore, the Court does not adopt the R&R's analysis of the materiality issue at pages 35-45.

[7]By contrast, the first superseding indictment, filed on December 2, 2009, simply stated that Defendant "knowingly and willfully executed and attempted to execute a scheme and artifice to defraud, by claiming to have performed health care services

[Doc. 67 at 1] (emphases added). Thus, while Defendant was correct in his original motion that "[n]owhere does the indictment use the word[] 'material'" [Doc. 32 at 2], the current indictment does indeed utilize the word not less than four times in its opening sentence. Accordingly, Defendant's objections on this point are overruled.

Similarly, Defendant's objections that the Government has not adequately described the scheme to defraud are rendered inapposite by the second superceding indictment. Indeed, the alleged scheme is clear from the face of the indictment--that for the purpose of "obtain[ing] money and property," Defendant committed the crime of fraud by claiming to have performed certain health-care services and then, knowing that those services had not actually been performed, collecting payments via mail and wire from customers who, based on the material belief that they had received said services, paid for them and thereby became victims of fraud. Given these charges, the Court concludes that the indictment adequately pleads a scheme and artifice to defraud sufficient to demonstrate that the grand jury had probable cause as to all of the elements of the offense and to place Defendant on notice of what he must defend against.

Therefore, the Defendant's objections to the R&R's finding on this matter are overruled and the motion to dismiss for failure to allege an essential element [Doc. 32] is denied. The R&R's analysis of this motion is fully adopted except for the materiality and "nature of the scheme" discussion at Doc. 49,

---

that he did not perform." [Doc. 23 at 1].

pages 35-45, which has been rendered moot by the second superceding indictment.

D.   Motion to Dismiss Count 37ss[8] [Doc. 33]

Defendant asserts in his motion to dismiss count 37ss [Doc. 33] that the phrase "any record" in 18 U.S.C. § 1519 was not intended to cover electronic records such as the "access logs" that he allegedly altered or falsified, and therefore count 37ss does not allege an actual crime [Doc. 33 at 7]. Defendant bases his argument on the fact that Congress, in passing 18 U.S.C. § 1520 concurrently with § 1519, used the phrase "records (including electronic records)" in the former but made no specific mention of "electronic" in the latter [Id. at 4]. Therefore, Defendant argues, § 1519 was clearly intended to not pertain to electronic records, because "[w]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." [Id.] (citing Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (quotation marks omitted)).

The R&R recommends that this motion be denied [Doc. 49 at 50]. The R&R notes the "plain and unambiguous" meaning of the term "any record" and gave the "short answer . . . that there is nothing limiting, ambiguous, or cryptic about the term." [Id. at 48]. Moreover, the R&R agrees with the Government's position that "§§ 1519 and 1520 cover different topics" and holds that "[t]he

---

[8]Count 37ss was count 34s in the first superseding indictment [Doc. 23].

latter statute does not refer to or otherwise relate to the former, and therefore its use of different language shines no light on an already clear statute." [Id. at 49-50]. Defendant, in his response to the R&R, simply states his objection and "relies on the arguments presented in his earlier pleadings concerning this Motion." [Doc. 56 at 21].

The Court also does not find any ambiguity in the phrase "any record." The word "any" means just that--every and all without qualification or specification. The computer access logs are a record of who accessed the computer and when, and therefore they fall within this classification. In other words, the term "any record" in 18 U.S.C. § 1519 clearly applies to electronic records such as the computer "access logs" that Defendant allegedly falsified. Due to the plain language of the statute, there is no need to resort to alternative methods of statutory interpretation. Therefore, Defendant's objections to the R&R on this matter are overruled, the R&R's analysis of this motion is adopted, and the motion to dismiss count 37ss [Doc. 33] is denied.

III. Conclusion

For the reasons stated above, Defendant's objections are OVERRULED and Magistrate Judge Baverman's R&R [Doc. 49] is adopted as modified; specifically, the R&R is adopted except for pages 35-45, which contain analysis rendered moot by the second superceding indictment. Accordingly, Defendant's motion for a bill of

14

particulars [Doc. 30] is DENIED IN PART and GRANTED IN PART and the motions to dismiss [Doc. 31; Doc. 32; Doc. 33] are DENIED.[9]

SO ORDERED this _11_ day of August, 2010.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

_____

[9]The R&R also denies the Government's motion for a protective order [Doc. 5] as moot due to an agreement reached by the parties. There are no objections to this holding. The Court therefore adopts the R&R and DENIES AS MOOT the Government's motion for a protective order [Doc. 5].

15